**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: x.AI/Grok Artificial Intelligence Minor Sexual Exploitation Litigation | MDL No. 3205 |

**RESPONSE OF PLAINTIFFS IN THE CONSOLIDATED CLASS CASES AND *DOE V* IN OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS UNDER 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. xAI Designed and Developed Grok in the Northern District of California, Where Relevant Witnesses and Documents Are Located. ........ 3

B. The Consolidated Class Cases Were Filed First and Are Consolidated Before Judge Pitts in the Northern District of California. ........ 4

C. Judge Pitts Is Actively Managing the Litigation. ........ 5

D. The Arkansas Actions Are Recently Filed Individual Actions Before a Single Judge. .. 7

E. Movants Seek to Move the Consolidated Class Cases and *Doe V* to Arkansas. ........ 7

III. LEGAL STANDARD ........ 8

IV. ARGUMENT ........ 8

A. Movants Cannot Carry Their Heavy Burden for Centralization. ........ 8

1. Movants' Burden Here is Heavier Given the Small Number of Actions. ........ 8

2. Informal Coordination Between Two Courts Is Practicable and Preferable to Centralization. ........ 10

a. The Northern District of California Actions Are Consolidated and Coordinated. .11

b. Judge Pitts Has Confirmed That the Two Courts Can Coordinate Directly. ........ 12

c. Coordination Measures Are Available to Avoid Duplicative Discovery. ........ 13

d. The Consolidated Class Proceeding and the Individual Actions Present Different Pretrial Needs. ........ 14

3. The Possibility of Future Filings Does Not Warrant Centralization. ........ 15

B. Alternatively, the Panel Should Centralize the Litigation in the Northern District of California Before Judge Pitts. ........ 16

1. The Northern District of California Is Where xAI Designed Grok and Where the Common Evidence Is Located. ........ 17

2. The Litigation Has Progressed Furthest in the Northern District of California. ........ 18

3. The Location of the Arkansas Plaintiffs Does Not Warrant Centralization in Arkansas. ........ 19

4. Judge Pitts Is Well Positioned to Serve as Transferee Judge. ........ 20

V. CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Cases**

*In re 3M Co. Lava Ultimate Prods. Liab. Litig.*,
222 F. Supp. 3d 1347 (J.P.M.L. 2016) ....................9, 11, 12

*In re Axon Enter., Inc., Body-Worn Camera & Digital Evidence Mgmt. Sys. Antitrust Litig.*,
776 F. Supp. 3d 1344 (J.P.M.L. 2025) .................... 9, 10, 14

*In re Bank of Am. Fraudulent Acct. Litig.*,
707 F. Supp. 3d 1415 (J.P.M.L. 2023) .................... 8, 9, 10

*In re Belviq (Lorcaserin HCl) Prods. Liab. Litig.*,
555 F. Supp. 3d 1369 (J.P.M.L. 2021) .................... 9, 13, 15

*In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011).................... 10

*In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
492 F. Supp. 3d 1347 (J.P.M.L. 2020) .................... 8

*In re Cooper Cos., Inc., In Vitro Fertilization Glob. Culture Media Prods. Liab. Litig.*,
753 F. Supp. 3d 1380 (J.P.M.L. 2024) ....................11, 12

*In re Fresh Dairy Prods. Antitrust Litig. (No. III)*,
190 F. Supp. 3d 1353 (J.P.M.L. 2016) .................... 14

*In re Fresh Dairy Prods. Antitrust Litig.*,
856 F. Supp. 2d 1344 (J.P.M.L. 2012) ....................11

*In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*,
532 F. Supp. 3d 1413 (J.P.M.L. 2021) .................... 10

*In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012) .................... 10

*In re Hotel Indus. Sex Trafficking Litig. (No. II)*,
730 F. Supp. 3d 1360 (J.P.M.L. 2024) .................... 12, 16

*In re Hotel Indus. Sex Trafficking Litig.*,
433 F. Supp. 3d 1353 (J.P.M.L. 2020) .................... 16

*In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
396 F. Supp. 3d 1366 (J.P.M.L. 2019) .................... 18

*In re Kmart Corp. Customer Data Sec. Breach Litig.*,
109 F. Supp. 3d 1368 (J.P.M.L. 2015) .................... 10

*In re Lens.com Mktg. & Sales Pracs. Litig.*,
776 F. Supp. 3d 1362 (J.P.M.L. 2025) ....................11, 14

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
959 F. Supp. 2d 1375 (J.P.M.L. 2013) .................... 15

*In re Lyft, Inc. Passenger Sexual Assault Litig.*,
819 F. Supp. 3d 1359 (J.P.M.L. 2026) .................... 19, 20

*In re OpenAI, Inc., Copyright Infringement Litigation*,
776 F. Supp. 3d 1352 (J.P.M.L. 2025) .................... 13, 18

*In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*,
655 F. Supp. 2d 1378 (J.P.M.L. 2009) .................... 6

*In re Pilot Flying J Fuel Rebate Cont. Litig. (No. II)*,
11 F. Supp. 3d 1351 (J.P.M.L. 2014).................... 16

*In re Roblox Corp. Child Sexual Exploitation & Assault Litig.*,
812 F. Supp. 3d 1355 (J.P.M.L. 2025) .................... 16

*In re Scotch Whiskey*,
299 F. Supp. 543 (J.P.M.L. 1969) .................... 9

*In re Snowflake, Inc., Data Sec. Breach Litig.*,
813 F. Supp. 3d 1349 (J.P.M.L. 2025) .................... 3, 20

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
637 F. Supp. 3d 1377 (J.P.M.L. 2022) .................... 16

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
699 F. Supp. 3d 1396 (J.P.M.L. 2023) .................... 6, 16

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*,
712 F. Supp. 3d 1394 (J.P.M.L. 2024) .................... 6

*In re Varsity Spirit Athlete Abuse Litig.*,
677 F. Supp. 3d 1376 (J.P.M.L. 2023) .................... 12

*In re Video Game Addiction Prods. Liab. Litig.*,
737 F. Supp. 3d 1353 (J.P.M.L. 2024) .................... 14

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
883 F. Supp. 2d 1350 (J.P.M.L. 2012) .................... 19

**Statutes**

28 U.S.C. § 1404 ........................................ 1, 8, 10

28 U.S.C. § 1404(a) ........................................ 5

28 U.S.C. § 1407 ........................................ 1, 2, 8, 10

28 U.S.C. § 1407(a) ........................................ 8

28 U.S.C. § 1407(b) ........................................ 20

Pursuant to Rule 6.1(c) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiffs in the four consolidated putative class actions pending before Judge P. Casey Pitts in the Northern District of California (the "Consolidated Class Cases")[1] and the coordinated *Doe V* action respectfully submit this response in opposition to the Motion for Transfer of Actions Under 28 U.S.C. § 1407 (MDL Dkts. 1, 3) (the "Motion") filed by plaintiffs in six individual actions pending in the Western District of Arkansas ("Movants").

## I. INTRODUCTION

Movants ask the Panel to create a Multidistrict Litigation ("MDL") for what are now 11 actions pending in just two districts: nine individual actions (seven of which were filed by Movants' counsel) before a single judge in the Western District of Arkansas, and five actions—which have now been consolidated and coordinated, and include all four of the pending putative class actions—before the Honorable P. Casey Pitts in the Northern District of California. MDL Dkt. 3-2; MDL Dkt. 14; *Doe I*, Dkt. 100.[2] The Panel routinely denies such requests, particularly where, as here, the movant has not explained why other readily available options, including transfer under 28 U.S.C. § 1404 (which movant declined) or coordination (in which movant is

---

[1] The Consolidated Class Cases are *Jane Doe 1 v. X.AI Corp.*, No. 5:26-cv-00772-PCP (N.D. Cal.) ("*Doe I*"); *Jane Doe 1 v. X.AI Corp.*, No. 5:26-cv-02246-PCP (N.D. Cal.) ("*Doe II*"); *Jane Doe 1 v. X.AI Corp.*, No. 5:26-cv-08567-PCP (N.D. Cal.) ("*Doe III*"); and *Jane Doe 1 v. X.AI Corp.*, No. 5:26-cv-09016-PCP (N.D. Cal.) ("*Doe IV*"). The coordinated individual action is *Doe 1 v. x.AI Corp.*, No. 5:26-cv-09617-PCP (N.D. Cal.) ("*Doe V*"). Defendants SpaceXAI Corp. (f/k/a X.AI Corp.), SpaceXAI LLC (f/k/a X.AI LLC), and SpaceXAI Holdings LLC (f/k/a X.AI Holdings LLC) are referred to collectively as "xAI." Record citations to "MDL Dkt." are to the docket in MDL No. 3205; citations to "*Doe I*, Dkt. __" and the like are to the docket in the referenced action.

2 Judge Pitts entered parallel orders consolidating cases on the dockets for all the Consolidated Class Cases. *See Doe II*, Dkt. 106; *Doe III*, Dkt. 47; *Doe IV*, Dkt. 42. Hereinafter, this brief cites only *Doe I*, Dkt. 100.

already engaged), will not suffice to ensure economy for the parties.

Centralization under § 1407 is unnecessary here, given that there are only two districts implicated, a relatively small number of actions, and alternative means of coordination are both underway and have not been exhausted. The four Consolidated Class Cases are the only class cases currently on file addressing nonconsensual explicit imagery created and disseminated by xAI's Grok. There is no appreciable benefit to centralizing these class actions with a handful of individual cases in another district, particularly given that counsel in the Northern District of California cases are already coordinating with counsel in Arkansas on key early case management matters, such as protective orders and ESI orders. Judge Pitts has also confirmed his willingness to coordinate informally if necessary, stating that "it's not too hard for me to get on the phone with a colleague in Arkansas as needed." Ex. 1, Tr. 18:3–12. That is precisely the judge-to-judge coordination that the Panel recognizes as the preferable alternative to centralization.

Alternatively, should the Panel nonetheless centralize, it should do so in the Northern District of California before Judge Pitts, where xAI designed and deployed Grok, where the witnesses and documents concerning that conduct are located, and where the first-filed and most advanced actions are pending. And, any centralization order should not be limited solely to cases alleging the creation of images of minors but should also include cases alleging the creation of images of adults, because many of the fundamental factual and legal issues overlap (as Judge Pitts' consolidation order, which includes cases alleging both kinds of claims, recognizes). Judge Pitts has presided over this litigation since January 2026. He has consolidated/coordinated all the related Northern District of California actions, decided contested motions (including xAI's request to stay *Doe I* in light of pending criminal proceedings, its

motion to transfer *Doe I* to the Northern District of Texas, and its request to stay all of the Consolidated Class Cases and *Doe V* pending the current Motion), and has confirmed that discovery is open. *Doe I*, Dkts. 80, 96; Ex. 1, Tr. 45:8–10.[3]

By contrast, the Arkansas cases have not progressed: apart from xAI's motions to stay and the plaintiffs' motions to proceed under pseudonyms and to coordinate the Arkansas actions with one another, no motion has been filed or decided, in any of the nine individual Arkansas actions. The presence of plaintiffs and witnesses in Arkansas does not counsel otherwise. There likely will be no need for any plaintiff to travel to the transferee court because "witness depositions typically are held where the witness resides" and any trials of non-class-member individuals could occur in their transferor district. *See In re Snowflake, Inc., Data Sec. Breach Litig.*, 813 F. Supp. 3d 1349, 1351 & n.3 (J.P.M.L. 2025). Therefore, the Panel should deny the Motion and allow the two courts to coordinate this litigation directly or, alternatively, centralize the cases before Judge Pitts in the Northern District of California.

## II. BACKGROUND

### A. xAI Designed and Developed Grok in the Northern District of California, Where Relevant Witnesses and Documents Are Located.

Every action on the Motion arises from xAI's Grok generative artificial-intelligence model. Movants admit that X.AI Corp. and X.AI Holdings LLC maintained their principal place of business in Palo Alto, with additional offices in San Francisco as of October 5, 2026. MDL Dkt. 3-1 at 9–10. Movants likewise identify the discovery at the heart of the litigation as depositions of "Defendants' officers, engineers, and safety personnel" and production of

[3] Citations to "Tr." are to the transcript of the October 15, 2026 hearing before Judge Pitts, *Doe I*, Dkt. 97, which is attached as Exhibit 1. The transcript was also filed on the *Doe II*, *Doe III*, and *Doe V* dockets. *See Doe II*, Dkt. 100; *Doe III*, Dkt. 44; *Doe V*, Dkt. 39. Hereinafter, this brief cites only *Doe I*, Dkt. 97.

"documentation, source code, and internal communications." *Id.* at 14; *see also Doe III*, Dkt. 1 ¶¶ 9–10, 20; *Doe I*, Dkt. 1 ¶¶ 22, 25, 27.

Likewise, the *Doe I* plaintiffs allege that "[t]he conduct alleged in this Complaint by xAI emanated from California," that "[t]he xAI employees primarily responsible for operating, maintaining, and managing Grok, including its image and video generation capabilities, are located in California," and that "a substantial part of the events giving rise to Plaintiffs' claims occurred in Palo Alto, CA and San Francisco, CA." *Doe I*, Dkt. 28 ¶¶ 16, 25–26. Similarly, the *Doe II* plaintiffs allege that xAI's "production, possession, and distribution of AI-generated CSAM occurred, in substantial part, in this District," and that "a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including xAI's creation and distribution of AI-generated CSAM." *Doe II*, Dkt. 26 ¶¶ 11, 13. Relevant employees of xAI are almost certain to be based in or near Palo Alto, which houses xAI's "advanced AI research, development, and engineering teams" including "[t]he engineers responsible for the design, training, and continued evolution of Grok." *Doe I*, Dkt. 44 at 23 (quoting Space Exploration Tech. Corp., Form S-1 (2026) at 211). Former employees, including whistleblowers, are also likely to be based in or near Palo Alto. *Id.* at 23–24.

**B. The Consolidated Class Cases Were Filed First and Are Consolidated Before Judge Pitts in the Northern District of California.**

Each Consolidated Class Case asserts claims on behalf of individuals depicted as minors in sexually explicit content that Grok generated. *Doe I*, Dkt. 28 ¶ 156; *Doe II*, Dkt. 26 ¶ 194; *Doe III*, Dkt. 1 ¶ 134; *Doe IV*, Dkt. 1 ¶ 94. *Doe I*, the first-filed action concerning Grok's generation of sexualized deepfakes of real people, was filed on January 23, 2026, on behalf of individuals depicted as adults, and was assigned to Judge Pitts. *Doe I*, Dkt. 1. *Doe II*, filed on March 16, 2026, was the first nationwide class action concerning Grok-generated child sexual abuse

material ("CSAM"). *Doe II*, Dkt. 1. On May 1, 2026, the *Doe I* plaintiffs amended their complaint to add claims on behalf of individuals who Grok depicted as minors, in addition to individuals depicted as adults. *Doe I*, Dkt. 28 ¶ 156. *Doe III*, which proposed an Arkansas subclass, and *Doe IV*, which includes victims of "legacy" CSAM, followed in August 2026. *Doe III*, Dkt. 1; *Doe IV*, Dkt. 1.

Judge Pitts related *Doe I* and *Doe II* on March 26, 2026. *Doe I*, Dkt. 25. On September 22, 2026, Judge Pitts related the remaining Consolidated Class Cases (*Doe III* and *Doe IV*) as well as *Doe V*, an individual action concerning Grok-generated CSAM. *Doe I*, Dkt. 79.

On October 23, 2026, Judge Pitts consolidated *Doe I-IV* matters (the "Consolidated Class Cases") and coordinated them with *Doe V*. *Doe I,* Dkt. 100. Accordingly, all Northern District of California actions will proceed under one case schedule, with the protective order and ESI protocol entered in the lead case to "apply in all of them"; will conduct discovery "on a single coordinated track"; and will cross-notice depositions, with "no witness . . . deposed more than once absent leave of Court." *Id.* ¶¶ 13, 15.

**C. Judge Pitts Is Actively Managing the Litigation.**

Substantive case management work and motion practice have been accomplished in the Consolidated Class Cases. For instance, a stipulated protective order was entered in *Doe I* on March 11, 2026. *Doe I*, Dkt. 21. On July 30, 2026, the Court denied xAI's motion to compel a plaintiff in *Doe I* to proceed non-pseudonymously. *Doe I*, Dkt. 58. On Ocotber 7, 2026, counsel for *Doe II* had a Rule 26(f) conference with Defendants. Ex. 2, Miles Decl. ¶ 6. On September 28, 2026, the Court denied xAI's motions to stay *Doe I* pending a related criminal proceeding and to transfer *Doe I* to the Northern District of Texas under 28 U.S.C. § 1404(a) pursuant to a

forum-selection clause in X's Terms of Service.[4] *Doe I*, Dkt. 80. In denying xAI's motions, Judge Pitts recognized that "as Grok's operators, defendants presumably possess much of the relevant information regarding the use of Grok by [the perpetrator]." *Id.* at 3. He also noted that "[d]efendants d[id] not contend that the interests of justice justify a transfer of this case even if the forum-selection clauses are unenforceable." *Id.* at 6.

On October 15, 2026, Judge Pitts denied xAI's motion to stay the Northern District of California actions pending this Motion. *Doe I*, Dkt. 96; Ex. 1, Tr. 20:2–11. He explained that "the four cases before me, although they might ultimately be part of the MDL, are distinct enough from the other cases that would ultimately be brought in, that postponing moving forward, particularly in those four cases, at this time doesn't make sense." Ex. 1, Tr. 20:5–9. Judge Pitts subsequently appointed Counsel in Does I-IV as interim class counsel in those actions. *Doe I*, Dkt. 98 ("Interim Class Counsel").[5]

He confirmed that "discovery is open," Ex. 1, Tr.at 45:8–10, directed the parties to work in good faith toward a protective order, an ESI protocol, and orders governing the handling of CSAM (*id.* at 50:9–20), and set a further status conference. *Doe I*, Dkt. 96. Plaintiffs in *Doe II*

---

[4] xAI based its transfer motion on the forum-selection clause in X's Terms of Service, which Judge Pitts held procedurally and substantively unconscionable. *Doe I*, Dkt. 80 at 4–6. xAI did "not contend that the interests of justice justify a transfer of this case even if the forum-selection clauses are unenforceable." *Id.* at 6. Nor would the clause bind the Panel: contractual forum-selection clauses "'do not limit the Panel's authority with respect to the selection of [a] transferee district.'" *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 712 F. Supp. 3d 1394, 1400 (J.P.M.L. 2024) (quoting *In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 2d 1378, 1379 (J.P.M.L. 2009)); *accord In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396, 1399 (J.P.M.L. 2023) ("The Panel is not bound by Uber's Terms of Use . . . .").

5 Judge Pitts entered the same order on the docket of each Consolidated Class Case. *See Doe II*, Dkt. 103; *Doe III*, Dkt. 45; *Doe IV*, Dkt. 39. Hereinafter, this brief cites only *Doe I*, Dkt. 98.

have since served their first sets of interrogatories, requests for production, and requests for admission on xAI. Ex. 2, Declaration of W. Daniel Miles, III ("Miles Decl.") ¶ 6.

Judge Pitts also addressed coordination with the Arkansas actions, observing as follows: "This is a unique one in which we have two jurisdictions, and we have nine cases involving individual plaintiffs. And one jurisdiction in the five cases, four of which are class actions." Ex. 1, Tr. 17:21–24. He continued: "it's not too hard for me to get on the phone with a colleague in Arkansas as needed," and the concerns xAI raised regarding the potential for duplicative litigation "may not be as pronounced in this case, given we are just talking about two jurisdictions, we are talking about a limited set of cases." *Id.* at 18:3–12.

**D. The Arkansas Actions Are Recently Filed Individual Actions Before a Single Judge.**

All nine Arkansas actions are individual actions pending before Chief Judge Timothy L. Brooks. MDL Dkt. 3-2; MDL Dkt. 3-1 at 9, 17. Movants' counsel filed seven of those actions—the six included in the original Motion and an additional action filed on October 13, 2026, which they have noticed as a related action; two other actions were removed from the Circuit Court of Benton County and are prosecuted by different counsel, who did not join the Motion. MDL Dkt. 3; MDL Dkt. 18; Ex. 2, Miles Decl. ¶ 11. In the Arkansas actions, xAI has moved to stay, and the plaintiffs have moved to proceed under pseudonyms. Ex. 2, Miles Decl. ¶ 12. On October 22, 2026, Movants' counsel and xAI jointly moved to coordinate the Arkansas actions for pretrial proceedings. *Jane Doe 2 v. X.AI Corp.*, No. 5:26-cv-05291-TLB (W.D. Ark.), Dkt. 6 ¶¶ 7–10; Ex. 2, Miles Decl. ¶ 12. No other motion has been filed, and none has been decided. Ex. 2, Miles Decl. ¶ 12.

**E. Movants Seek to Move the Consolidated Class Cases and *Doe V* to Arkansas.**

Movants ask the Panel to transfer *Doe II*, *Doe III*, *Doe IV*, and *Doe V* to the Western District of Arkansas. MDL Dkt. 3; MDL Dkt. 3-2. Movants' schedule omitted *Doe I*, the first-

filed action (*id.*), which its plaintiffs have since noticed as a related action. MDL Dkt. 14. Movants have since noticed a ninth Arkansas action as well. MDL Dkt. 18.

Movants did not contact counsel in the Consolidated Class Cases about coordination before filing the Motion and declined transfer under 28 U.S.C. § 1404. Ex. 2, Miles Decl. ¶ 13. Since filing, however, Movants have embraced Interim Class Counsel's offers and efforts to coordinate, indicating that they wanted to coordinate on pleadings, Rule 12 motion practice, discovery, and case schedules. Ex. 2, Miles Decl. ¶ 14. Indeed, Interim Class Counsel are currently working with Movants on a confidentiality order, ESI protocol, and other case management orders to ensure coordination. *Id.*

## III. LEGAL STANDARD

Section 1407 provides that "[w]hen civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings," but only "upon [the Panel's] determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "Common factual questions . . . are not the sole prerequisite for centralization under Section 1407. Centralization also must promote the just and efficient conduct of the actions." *In re Cincinnati Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1347, 1349–50 (J.P.M.L. 2020).

## IV. ARGUMENT

### A. Movants Cannot Carry Their Heavy Burden for Centralization.

#### 1. Movants' Burden Here is Heavier Given the Small Number of Actions.

The Panel has repeatedly articulated that "[w]here only a minimal number of actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *In re Bank of Am. Fraudulent Acct. Litig.*, 707 F. Supp. 3d 1415,

1416 (J.P.M.L. 2023) (denying centralization of "only six actions . . . pending in only two districts"); *In re Axon Enter., Inc., Body-Worn Camera & Digital Evidence Mgmt. Sys. Antitrust Litig.*, 776 F. Supp. 3d 1344, 1345 (J.P.M.L. 2025) (denying centralization of a putative class action and an individual action pending in two districts); *see also* Manual Complex Lit. § 20.131 (4th ed.) ("those advocating transfer bear a heavy burden of persuasion when there are only a few actions, particularly those involving the same parties and counsel" (citing *In re Scotch Whiskey*, 299 F. Supp. 543 (J.P.M.L. 1969))). Movants do not acknowledge, much less satisfy, the heavier burden that applies to the Motion.

In *Bank of America*, the Panel denied centralization because there were "only six actions at issue (including the two potentially-related actions), which are pending in only two districts." 707 F. Supp. 3d at 1416. It did the same in *Axon*, where "only a minimal number of actions are involved, like the two actions here," 776 F. Supp. 3d at 1345, and in *3M Lava Ultimate*, where "[o]nly six related actions currently are pending in only two districts." *In re 3M Co. Lava Ultimate Prods. Liab. Litig.*, 222 F. Supp. 3d 1347, 1347 (J.P.M.L. 2016).

This litigation consists of eleven actions in just two districts. MDL Dkt. 3-2; MDL Dkt. 14; MDL Dkt. 18. Notably, Movants' counsel filed seven of the nine Arkansas actions, and all nine are before one judge. MDL Dkt. 3; MDL Dkt. 18; Ex. 2, Miles Decl. ¶ 11. As such, the Motion presents "only a limited number of actions [that] have been filed, many by the same plaintiffs' counsel[,]" which does not merit centralization. *See In re Belviq (Lorcaserin HCl) Prods. Liab. Litig.*, 555 F. Supp. 3d 1369, 1370 (J.P.M.L. 2021) (denying centralization of thirteen actions in ten districts). Thus, Movants have a heavy burden for centralization, and, as detailed below, they fail to meet it.

**2. Informal Coordination Between Two Courts Is Practicable and Preferable to Centralization.**

Movants fail to address a single alternative to centralization, and the Panel has faulted movants for that omission. *See, e.g., In re Gen. Motors LLC Chevrolet Bolt EV Battery Prods. Liab. Litig.*, 532 F. Supp. 3d 1413, 1415 (J.P.M.L. 2021) ("[M]ovants have not demonstrated consideration of alternatives to centralization[.]"); *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) ("[C]entralization under Section 1407 should be the last solution after considered review of all other options."). Alternatives to centralization include "voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent pretrial rulings." *Axon*, 776 F. Supp. 3d at 1345; *Bank of Am.*, 707 F. Supp. 3d at 1416 (citing *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1379–80 (J.P.M.L. 2012)).

The Panel has also encouraged parties to consider Section 1404 transfer as an alternative to centralization. *See In re Kmart Corp. Customer Data Sec. Breach Litig.*, 109 F. Supp. 3d 1368, 1369 (J.P.M.L. 2015) (noting that where three of five cases were filed in the same district, "the parties ought to be able to agree to voluntarily transfer [two actions] pursuant to Section 1404"). Indeed, the Panel has denied centralization where "the parties have not yet seriously pursued informal coordination, which provides a practicable alternative to formal centralization under Section 1407." *Axon*, 776 F. Supp. 3d at 1345. Movants made no attempt to coordinate before filing and did not address alternatives to centralization in the Motion.[6] Ex. 2, Miles Decl.

[6] Plaintiffs in the Consolidated Class Cases and *Doe V* also have no objection to affirmative transfer of any related cases to the Northern District of California, the most appropriate forum for cases against xAI. Immediately after the filing of the Motion, Interim Class Counsel reached out to Movants to ask if they would agree to Section 1404 transfer to the Northern District of California; Movants said no. Ex. 2, Miles Decl. ¶ 13.

¶ 13. Just as coordination between counsel is demonstrably feasible here, informal coordination between two judges is also feasible.

**a. The Northern District of California Actions Are Consolidated and Coordinated.**

The Panel has consistently recognized that relation or consolidation of actions within one district eliminates the need for an MDL. *See, e.g.*, *In re Cooper Cos., Inc., In Vitro Fertilization Glob. Culture Media Prods. Liab. Litig.*, 753 F. Supp. 3d 1380, 1381 (J.P.M.L. 2024) (denying centralization of 29 actions where "[a]ll Northern District of California actions already have been related before the same judge"); *In re Fresh Dairy Prods. Antitrust Litig.*, 856 F. Supp. 2d 1344, 1345 (J.P.M.L. 2012) (denying centralization even though the defendants supported it, because "there are, as a practical matter, really only two actions in this docket, as the three Northern District of California actions have been consolidated."); *3M Lava Ultimate*, 222 F. Supp. 3d at 1347 (denying centralization where counsel in four actions in one district had "agreed to consolidation of those actions" such that "as a practical matter, only two involved actions"); *In re Lens.com Mktg. & Sales Pracs. Litig.*, 776 F. Supp. 3d 1362, 1363–64 (J.P.M.L. 2025) (denying centralization of putative class actions "pending in just two districts, four of them . . . consolidated before a single judge").

Here, Judge Pitts has consolidated all related class cases currently on file and coordinated them with *Doe V*. *Doe I,* Dkt. 100. This litigation now consists of one consolidated class proceeding, with *Doe V* coordinated alongside it, before Judge Pitts, and nine individual actions before Chief Judge Brooks. That is exactly the posture in which the Panel has found centralization unnecessary. *Fresh Dairy*, 856 F. Supp. 2d at 1345; *3M Lava Ultimate*, 222 F. Supp. 3d at 1347.

**b. Judge Pitts Has Confirmed That the Two Courts Can Coordinate Directly.**

Where, as here, the litigation is concentrated before two judges, "[t]hese two courts do not need the procedural mechanism of Section 1407 centralization in place to exercise their inherent authority to coordinate the cases before them or to establish an efficient pretrial structure," and the judges "should be able to realize important efficiencies by coordinating with each other and by streamlining the cases before them." *In re Hotel Indus. Sex Trafficking Litig. (No. II)*, 730 F. Supp. 3d 1360, 1364 (J.P.M.L. 2024); *see also Cooper Cos.*, 753 F. Supp. 3d at 1381 ("[I]nformal cooperation and coordination among the parties and involved courts are adequate alternatives to centralization . . . ."); *3M Lava Ultimate*, 222 F. Supp. 3d at 1348 ("[I]nformal coordination and cooperative efforts by the parties and involved courts should be sufficient to minimize or eliminate duplicative discovery and other pretrial proceedings.").

The *Manual for Complex Litigation* explains that "[e]ven when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts. Coordination requires effective communication between judges and among judges and counsel." Manual Complex Lit. § 20.14 (4th ed.). To that end, "[a]ll judges may attend joint hearings or conferences, in person or by telephone," which "may be followed by joint or parallel orders by the several courts in which the cases are pending." *Id.*

Judge Pitts has already confirmed that such coordination is readily available here. *See In re Varsity Spirit Athlete Abuse Litig.*, 677 F. Supp. 3d 1376, 1378 (J.P.M.L. 2023) (denying centralization because "[t]he parties and the involved courts already have demonstrated they are willing to informally coordinate," concluding that "informal coordination of these actions is feasible"). At the October 15, 2026 hearing, Judge Pitts explained that "it's not too hard for me to get on the phone with a colleague in Arkansas as needed, particularly where you have this --

this often happens where you have a state proceeding and a federal proceeding and you don't have any formal method like an MDL in order to coordinate those proceedings." Ex. 1, Tr. 18:3–8. He added that xAI's coordination concerns "may not be as pronounced in this case, given we are just talking about two jurisdictions, we are talking about a limited set of cases." *Id.* at 18:9–12. Given Judge Pitts' (and the parties') willingness to coordinate, centralization is unnecessary to promote the just and efficient conduct of the actions.

**c. Coordination Measures Are Available to Avoid Duplicative Discovery.**

The *Manual for Complex Litigation* sets forth various tools for related cases to make the "product of discovery usable in all cases and avoid duplicative activity" such as "cross-filing deposition notices, interrogatories, and requests for production" as well as coordinating document productions and establishing joint depositories. *See* Manual Complex Lit. § 20.14 (4th ed.). Consistent with the tools the *Manual* describes, Plaintiffs in the Consolidated Class Cases are prepared to enter a cross-district coordination stipulation, subject to approval by both courts, providing for: (1) cross-noticing of all depositions of xAI witnesses in both districts, so that each witness is deposed once on common subjects; (2) a common protective order and ESI protocol, proposed to both courts; (3) document production stipulations between all parties that provide access for all plaintiffs' counsel to xAI's document productions; and (4) coordinated briefing on overlapping Rule 12 issues.[7] Ex. 2, Miles Decl. ¶ 14; *Doe III*, Dkt. 32 at 13–14. The Panel gives weight to such offers. *See Belviq*, 555 F. Supp. 3d at 1370 (denying centralization where defendants offered to cross-notice depositions, because "it should be possible to minimize

[7] These proposed measures distinguish *In re OpenAI, Inc., Copyright Infringement Litigation*, 776 F. Supp. 3d 1352 (J.P.M.L. 2025). There, putative class actions were pending in both districts, raising the risk of "inconsistent pretrial rulings, particularly as to class certification[,]" *id.* at 1354, and coordination had broken down because "[t]he parties ha[d] been unable to agree on a deposition coordination protocol to eliminate duplicative depositions of defense witnesses," *id.* at 1355. Neither circumstance exists here.

duplicative discovery through cooperative efforts"); *see also In re Video Game Addiction Prods. Liab. Litig.*, 737 F. Supp. 3d 1353, 1355 (J.P.M.L. 2024) (finding informal coordination "a practicable alternative to centralization" where defense counsel "represented that they will coordinate any overlapping discovery that potentially may arise").

xAI's announced support for centralization does not change the analysis. *See* Ex. 1, Tr. 7:6–8. The Panel has denied centralization on a common defendant's own motion where, as here, the actions were "pending in just two districts" and informal coordination was feasible. *Lens.com*, 776 F. Supp. 3d at 1363–64. And the objective xAI described to Judge Pitts, "one case schedule, one protective order, one ESI agreement and one set of the various protocols that will apply" (Ex. 1, Tr. 8:2–4), is precisely what Plaintiffs' coordination proposal provides. The existing Northern District of California structure already supplies those efficiencies. Plaintiffs' proposed cross-district measures would address the remaining overlap with the Arkansas actions.

**d. The Consolidated Class Proceeding and the Individual Actions Present Different Pretrial Needs.**

Centralization would also yield fewer efficiencies than Movants suggest because the Consolidated Class Cases are putative class actions and the Arkansas actions are individual actions. In *Axon*, the Panel found that a putative class action "likely will involve class certification discovery and motions irrelevant to" an individual action, a difference that "likely will diminish the potential efficiencies from centralizing." 776 F. Supp. 3d at 1345. And the Panel has refused to centralize a recently filed individual action with consolidated class actions because "[t]ransferring [the individual action] . . . at this juncture would complicate and delay the [class] litigation while providing no substantial offsetting benefit." *In re Fresh Dairy Prods. Antitrust Litig. (No. III)*, 190 F. Supp. 3d 1353, 1355 (J.P.M.L. 2016).

Judge Pitts drew the same distinction in denying xAI's stay motion, finding that the Consolidated Class Cases "are distinct enough from the other cases that would ultimately be brought in, that postponing moving forward, particularly in those four cases, at this time doesn't make sense." Ex. 1, Tr. 20:5–9. That said, the coordination of *Doe V* with the Consolidated Class Cases illustrates that common discovery can be shared while preserving the distinct pretrial needs of class and individual claims. Plaintiffs do not contend that those claims cannot be managed together. They contend that the existing structure permits the relevant efficiencies without centralization.

But Movants seek even more: transfer of the first-filed class actions to the court hearing the newer individual actions—in a forum bearing no nexus to xAI's underlying conduct—which have not progressed beyond the filing of complaints and motions to stay, proceed under pseudonyms, and coordinate those actions with one another. Ex. 2, Miles Decl. ¶ 12; *Jane Doe 2*, Dkt. 6 ¶¶ 7–10. To the extent the Arkansas plaintiffs fall within the proposed classes, any overlap is best addressed by coordination, not transfer. *See* Manual Complex Lit. § 20.14 (4th ed.) ("Conflicts between class actions, or between a class action and individual actions, can be avoided by coordinating the drafting of class definitions.").

**3. The Possibility of Future Filings Does Not Warrant Centralization.**

In addition to ignoring that this litigation has been ongoing since *Doe I* was filed in January 2026, Movants' prediction of "a wave of cases to come" is irrelevant. MDL Dkt. 3-1 at 8. The Panel is "disinclined to take into account the mere possibility of future filings in our centralization calculus." *Belviq*, 555 F. Supp. 3d at 1370 (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013)). "[T]he mere possibility of additional actions does not support centralization, even where

thousands of actions are predicted." *Hotel (No. II)*, 730 F. Supp. 3d at 1362 (quoting *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020)).

Also, Movants' reliance on *Uber* and *Social Media* is misplaced, as those cases involved litigation of an entirely different scale. Those authorities do not establish that centralization is necessary for 11 actions pending in only two districts. *Uber* involved "79 actions pending in 13 districts," with "at least 14 different plaintiffs' firms," and the Panel reasoned that "[g]iven the large and growing number of involved actions and counsel, centralization likely will streamline overlapping discovery and pretrial proceedings." *Uber*, 699 F. Supp. 3d at 1399. Similarly, *Social Media* involved 28 actions in 17 different districts, plus 56 related actions in 24 more. *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 637 F. Supp. 3d 1377, 1377 (J.P.M.L. 2022).[8] Movants' own authorities thus confirm that scale is the main driver of centralization. *Accord In re Pilot Flying J Fuel Rebate Cont. Litig. (No. II)*, 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014) (rejecting "too few cases" objection because "[t]here are seven cases pending in six different courts, and most involve separate counsel").

### B. Alternatively, the Panel Should Centralize the Litigation in the Northern District of California Before Judge Pitts.

If the Panel concludes that centralization is warranted, all but one factor that governs transferee selection points to the Northern District of California. The Panel considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." Manual Complex

[8] In *Roblox*, the Panel rejected informal coordination only because the litigation "consist[ed] of nearly 80 actions and potential tag-along actions pending across eighteen districts before dozens of judges," with "[a]t least fifteen different plaintiffs' firms." *In re Roblox Corp. Child Sexual Exploitation & Assault Litig.*, 812 F. Supp. 3d 1355, 1357 (J.P.M.L. 2025).

Lit. § 20.131 (4th ed.). Movants address only some of those factors (MDL Dkt. 3-1 at 17–19) and omit the two on which this litigation most clearly supports centralization in the Northern District of California: where discovery will occur and where cases have progressed furthest.

**1. The Northern District of California Is Where xAI Designed Grok and Where the Common Evidence Is Located.**

Movants' own allegations place the common core of this litigation in the Northern District of California by alleging "every pixel of the output is calculated by Defendants' own model, in real time, on servers Defendants own and control." MDL Dkt. 3-1 at 4. They also admit that xAI operates in Palo Alto, with additional offices in San Francisco. *Id.* at 9–10. They identify the common discovery as depositions of "Defendants' officers, engineers, and safety personnel" and production of "documentation, source code, and internal communications." *Id.* at 14. And they acknowledge that "[e]very plaintiff will seek discovery into the same model architecture, the same Spicy Mode rollout decisions, and the same corporate response to the same regulatory warnings." *Id.* at 13. Notably, the first of those regulatory warnings came from California's Attorney General, who "opened a formal investigation into Defendant xAI" on January 14, 2026. *Id.* at 5.

Judge Pitts has already recognized that the evidence even of a particular perpetrator's use of Grok rests largely with xAI: "as Grok's operators, defendants presumably possess much of the relevant information regarding the use of Grok by [the perpetrator]." *Doe I*, Dkt. 80 at 3. The Consolidated Class Cases' complaints likewise allege that the xAI employees "primarily responsible for operating, maintaining, and managing Grok . . . are located in California," and that xAI's creation and distribution of the content at issue occurred "in substantial part" in the Northern District of California. *Doe I*, Dkt. 28 ¶¶ 25–26; *Doe II*, Dkt. 26 ¶¶ 11, 13; *see* Section II.A, *supra*.

The Panel consistently looks to where the key evidence and witnesses are located. *See* Manual Complex Lit. § 20.131 (4th ed.). In *Juul*, the Panel selected the Northern District of California because the defendant "represent[ed] that most of the key evidence and witnesses are located there." *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (J.P.M.L. 2019). The same is true here: the engineers and other personnel responsible for designing, operating, and managing Grok, and the records of their decisions, are located in the Northern District of California. MDL Dkt. 3-1 at 14; *Doe I*, Dkt. 28 ¶¶ 25–26; *Doe II*, Dkt. 26 ¶¶ 11, 13; *Doe I*, Dkt. 44 at 23–24. Thus, the Northern District of California is a more appropriate forum should the Panel conclude that centralization is warranted.

**2. The Litigation Has Progressed Furthest in the Northern District of California.**

The Northern District of California is also where the cases "have progressed furthest." Manual Complex Lit. § 20.131 (4th ed.). The Panel regularly selects the transferee judge who has already invested in the litigation. For example, in *Juul*, the Panel chose the judge who had "been presiding over most of the California actions since they were filed and already ha[d] ruled on two motions to dismiss." 396 F. Supp. 3d at 1368. In *OpenAI*, it selected the court whose judges "have devoted substantial time and resources to this litigation, and thus are well situated to steer this litigation on a prudent and expeditious course." 776 F. Supp. 3d at 1356.

Here, Judge Pitts in the Northern District of California has presided over the first-filed action, *Doe I*, since January 2026. *Doe I*, Dkt. 5. A protective order has been in place there since March 2026. *Doe I*, Dkt. 21. Judge Pitts has related every Grok action in the district (*Doe I*, Dkts. 25, 79); decided contested motions after full briefing and hearings (*Doe I*, Dkts. 58, 59, 80); denied xAI's motion to stay pending this Motion (*Doe I*, Dkt. 96); and consolidated the Consolidated Class Cases and coordinated them with *Doe V*. *Doe I,* Dkt. 100. Judge Pitts also appointed Interim Class Counsel over the Consolidated Class Cases. *Doe I*, Dkt. 98. The parties

have held their Rule 26(f) conference, and "discovery is open." Ex. 1, Tr. 44:23–45:9. On October 21, 2026, plaintiffs in *Doe II* served their first sets of written discovery on xAI. Ex. 2, Miles Decl. ¶ 6. By contrast, nothing in Arkansas has been filed or decided apart from the complaints and motions to stay, to proceed under pseudonyms, and to coordinate those actions with one another. Ex. 2, Miles Decl. ¶ 12; *Jane Doe 2*, Dkt. 6 ¶¶ 7–10.

Movants' reliance on the number of Arkansas actions does not change the analysis (MDL Dkt. 3-1 at 17), because the Panel uses "no single factor" to select a transferee district. Manual Complex Lit. § 20.131 (4th ed.) (citation omitted). Indeed, *Lyft* selected the Northern District of California even though eight of 21 actions were pending there because "the first-filed actions" were filed in the district. *In re Lyft, Inc. Passenger Sexual Assault Litig.*, 819 F. Supp. 3d 1359, 1361 (J.P.M.L. 2026). Therefore, the Northern District of California is the appropriate forum should the actions be centralized.

**3. The Location of the Arkansas Plaintiffs Does Not Warrant Centralization in Arkansas.**

Movants' preference for Arkansas rests on plaintiff residence and the location of a single perpetrator's conduct. MDL Dkt. 3-1 at 17. However, the six named plaintiffs in *Doe III* are Arkansas residents who chose to sue in the Northern District of California, where xAI was headquartered at the time of filing and where it designed and currently operates Grok (*Doe III*, Dkt. 1 ¶¶ 9–10, 12–17), and the plaintiff in Movants' most recent action now resides in Texas. *Jane Doe 2*, Dkt. 2 ¶ 22. Regardless, the Panel "looks to 'the overall convenience of the parties and witnesses in the litigation as a whole, not just those of a single plaintiff or defendant in isolation.'" *Snowflake,* 813 F. Supp. 3d at 1351 (quoting *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351–52 (J.P.M.L. 2012)). "[B]ecause transfer is for pretrial proceedings only, there likely will be no need for plaintiff to travel to the transferee forum," and

"witness depositions typically are held where the witness resides." *Id.* at 1351 & n.3; *see* 28 U.S.C. § 1407(b) (transferee judge "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions"). Also, perpetrator-specific evidence is not common to the litigation, and much of it is in xAI's hands. *Doe I*, Dkt. 80 at 3; *see also* § IV.B.1, *supra*. Thus, the location of some plaintiffs and one known perpetrator is insufficient to support centralization in Arkansas.

**4. Judge Pitts Is Well Positioned to Serve as Transferee Judge**.

Judge Pitts presides over every Northern District of California action, has already decided contested motions in this litigation, and has demonstrated his commitment to coordinating with the Arkansas court. *Doe I*, Dkts. 25, 58, 59, 79, 80, 96; Ex. 1, Tr. 18:2–12. That he has not yet presided over an MDL is no obstacle because the Panel regularly assigns litigation to capable judges who already preside over related actions and have "not yet had the opportunity to preside over multidistrict litigation." *E.g.*, *Lyft*, 819 F. Supp. 3d at 1361. Therefore, should the Panel centralize the litigation, it should be assigned to Judge Pitts. Moreover, given the overlap in facts and legal issues, the consolidation order already in place, and the allegations in *Doe I* (which encompass imagery depicting adults and minors), any MDL should include both types of claims and not be limited only to claims depicting minors.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs in the Consolidated Class Cases and *Doe V* respectfully request that the Panel deny the Motion. In the alternative, should the Panel conclude that centralization is warranted, Plaintiffs request that the Panel centralize the litigation, including *Doe I*, in the Northern District of California before the Honorable P. Casey Pitts.

Dated: October 27, 2026

Respectfully submitted,

*/s/ W. Daniel "Dee" Miles, III*
W. Daniel "Dee" Miles
Alison D. Hawthorne
Paul W. Evans
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
Dee.Miles@BeasleyAllen.com
Alison.Hawthorne@BeasleyAllen.com
Paul.Evans@BeasleyAllen.com
218 Commerce Street
Montgomery, AL 36104
Telephone: 334.269.2343
Facsimile: 334.954.7555

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Taylor Applegate (SBN 357742)
taylora@salahilaw.com
Nicole Cabañez (SBN 365099)
nicolec@salahilaw.com
**SALAHI PC**
505 Montgomery St., 11th Floor
San Francisco, CA 94111
Telephone: 415.236.2305

Paul Byrd
**PAUL BYRD LAW FIRM, PLLC**
Paul@paulbyrdlawfirm.com
415 N. McKinley St., Suite 210
Little Rock, AR 72205
Telephone: 501.420.3050
Facsimile: 501.420.3128

Aaron Cash
**HERRERA LAW GROUP**
Cash@herreralawnwa.com
1821 S. 8th Street
Rogers, AR 72756
Telephone: 479.770.5292
Facsimile: 479.770.6042

*Attorneys for Plaintiffs and the Proposed Classes in Doe 1, et al. v. x.AI Corp., et al., No. 5:26-cv-08567-PCP (N.D. Cal.) ("Doe III")*

*/s/ Annika K. Martin (with permission)*
Annika K. Martin
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
akmartin@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Mark P. Chalos
Betsy A. Sugar
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
mchalos@lchb.com
bsugar@lchb.com
222 2nd Ave. S., Suite 1640
Nashville, TN 37201
Telephone: 615.313.9000
Facsimile: 615.313.9965

Michelle A. Lamy (SBN 308174)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
mlamy@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000

Vanessa Baehr-Jones (SBN 281715)
**BAEHR-JONES LAW PC**
vanessa@advocatesforsurvivors.com
4200 Park Boulevard, No. 413
Oakland, CA 94602
Telephone: 510.500.9634

*Attorneys for Plaintiffs and the Proposed Classes in Doe 1, et al. v. x.AI Corp., et al., No. 5:26-cv-02246-PCP (N.D. Cal.) ("Doe II")*

*/s/ E. Michelle Drake (with permission)*
E. Michelle Drake
James Hannaway
**BERGER MONTAGUE PC**
emdrake@bergermontague.com
jhannaway@bergermontague.com
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 594-5999

Sophia M. Rios (SBN 305801)
**BERGER MONTAGUE PC**
srios@bergermontague.com
8241 La Mesa Blvd., Suite A
La Mesa, CA 91942
Telephone: (619) 489-0300

Shanon J. Carson
**BERGER MONTAGUE PC**
scarson@bergermontague.com
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215-875-3000

*Attorneys for Plaintiffs and the Proposed Classes in Doe, et al. v. x.AI Corp., et al., No. 5:26-cv-00772-PCP (N.D. Cal.) ("Doe I")*

*/s/ Adam E. Polk (with permission)*

Adam E. Polk (SBN 273000)
Dena C. Sharp (SBN 245869)
Sarah R. London (SBN 267083)
Andrew R. Kaufman
Muriel Kenfield-Kelleher
**GIRARD SHARP LLP**
dsharp@girardsharp.com
apolk@girardsharp.com
slondon@girardsharp.com
akaufman@girardsharp.com
mkelleher@girardsharp.com
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Micha Star Liberty (SBN 215687)
**LIBERTY LAW**
micha@libertylaw.com
1999 Harrison Street, Ste. 1800
Oakland, CA 94612
Telephone: 510-645-1000

Margaret E. Mabie
**MARSH LAW FIRM PLLC**
Margaretmabie@marsh.law
31 Hudson Yards, 11th Floor
New York, New York 10001
Telephone: (315) 296-9046

*Attorneys for Plaintiff and the Proposed Classes in Doe 1, et al. v. x.AI Corp., et al.,*

*No. 5:26-cv-09016-PCP (N.D. Cal.) ("Doe IV")*

*/s/ Zachary Yurick (with permission)*

Zachary Yurick
(zyurick@goldbergmaloney.com)
Joel Goldberg
(jgoldberg@goldbergmaloney.com)
Charles P. Maloney IV
(cmaloney@goldbergmaloney.com)
Basil Joy (bjoy@goldbergmaloney.com)
GOLDBERG, GOLDBERG, & MALONEY
213-215 West Miner Street West Chester, PA 19382
Tel: (610) 436-6220

Marco A. Gonzalez (Marco@coastlaw.com)
Taleah Phillips (Taleah@coastlaw.com)
COAST LAW GROUP LLP
1140 S. Coast Hwy 101
Encinitas, CA 92024
Tel: (760) 985-9751

*Attorneys for Plaintiff and the Proposed Classes in Doe 1, et al. v. x.AI Corp., et al., No. 5:26-cv-09617-PCP (N.D. Cal.) ("Doe V")*