**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE xAI/GROK ARTIFICIAL INTELLIGENCE MINOR SEXUAL EXPLOITATION LITIGATION** | **)**<br>**)**<br>**)**<br>**)** | **MDL Docket No. 3205** |

**xAI'S RESPONSE TO THE MOTION TO TRANSFER ACTIONS FOR COORDINATED PRETRIAL PROCEEDINGS**

SpaceXAI Corp. (f/k/a X.AI Corp.), SpaceX Super Intelligence LLC (f/k/a SpaceXAI LLC),[1] and SpaceXAI Holdings LLC (together, "xAI") support centralizing pretrial proceedings in a suitable forum for the pending federal actions that have been filed against xAI related to the alleged misuse by third parties of its artificial intelligence tools Grok and Grok Imagine. There are currently fourteen federal and two state actions alleging that Grok users manipulated the platform to create unlawful images and videos of minors and non-consenting adults. To the extent the Panel is inclined to centralize the federal actions, xAI agrees with the moving plaintiffs that the most appropriate forum is the Western District of Arkansas, where nine such actions are currently pending before Chief Judge Timothy L. Brooks.

xAI vigorously disputes the allegations of the complaints at issue and condemns the creation of sexually explicit images and videos depicting minors and non-consenting adults in the strongest possible terms. Images and videos of that nature are strictly prohibited on the X and xAI platforms, and xAI takes swift action against users it identifies as violating these policies. As xAI will show, the xAI users who misused and manipulated Grok are legally responsible for any harm they caused, not xAI. However, given that twenty law firms forming ten different groups have

[1] SpaceX Super Intelligence LLC was known as SpaceXAI LLC until October 27, 2026.

now filed sixteen actions in multiple jurisdictions with substantially overlapping allegations about the misuse of Grok, xAI supports centralization, which "will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." *In re Google Inc. Gmail Litig.*, 936 F. Supp. 2d 1381, 1382 (J.P.M.L. 2013).

Centralization of these actions before Chief Judge Brooks in the Western District of Arkansas is prudent, since Chief Judge Brooks is an experienced judge who has been on the bench for more than a decade, and the Western District of Arkansas is a central location that is easily accessible for the plaintiffs, defendants, and key witnesses. In fact, half of the 32 named plaintiffs currently reside in Arkansas or resided there during the relevant period. And the central perpetrator named in the largest number of complaints resides in Arkansas. Moreover, although the Western District of Arkansas has successfully managed MDLs in the past, there are no active MDLs in that district.

To the extent the Panel intends to create an MDL, xAI proposes that the cases identified in Exhibit A (the "Related Actions") to this Response should be included. Exhibit A differs slightly from the moving plaintiffs' Schedule of Actions in three respects. First, Exhibit A includes a recently filed case against xAI in the Western District of Arkansas alleging nearly identical facts as the others pending in the district, case no. 5:26-cv-05291 (W.D. Ark.). Second, xAI submits that case no. 5:26-cv-00772 (N.D. Cal.), which involves alleged misuse of Grok to create sexually explicit images and videos of nonconsenting adults, should be coordinated as well, as it involves substantially overlapping allegations about Grok's design and safeguards. While the moving plaintiffs proposed consolidating only actions involving minors, the allegations in the case involving adults substantially overlap with the minor actions, such that coordination of all cases in a single MDL is necessary to achieve the benefits of centralization. Third, xAI opposes the

inclusion of one of the actions in the moving plaintiffs' Schedule of Actions, *Doe 1 v. X Corp.*, No. 3:26-cv-10913 (N.D. Cal.), which does not allege the misuse of Grok or any other of xAI's artificial intelligence tools and indeed concerns events that occurred before xAI even existed. *See* Schedule of Actions at 2, ECF No. 3-2. xAI has conferred with the moving plaintiffs' counsel, who acknowledged that this case was included in error, and the moving plaintiffs have since filed a Notice of Clarification withdrawing the case from its Schedule of Actions. ECF No. 31. Finally, because some plaintiffs are allegedly adults depicted as adults, adults depicted as minors, or minors depicted as minors in the alleged images or videos, xAI respectfully requests that a more accurate caption be used for the MDL, as follows: *In re xAI/Grok Deepfake Litigation*.

## BACKGROUND

This past year, xAI and its affiliates have been named in an increasing number of civil lawsuits related to Grok, its artificial-intelligence chatbot. The suits are brought by pseudonymous "Doe" plaintiffs who allege that users manipulated Grok's algorithm to generate sexually explicit images and videos of minors and nonconsenting adults and that xAI failed to implement the necessary measures to prevent users from creating and disseminating such content on the platform.

xAI takes allegations like these very seriously. xAI has "zero tolerance for any forms of child sexual exploitation, non-consensual nudity, and unwanted sexual content" on Grok or the X platform.[2] Since xAI launched Grok, it has diligently investigated reported misuse and continually strengthened its safeguards, including by implementing image-editing rules, stricter filters, and limitations on who can access image-generation features.[3] Additional safeguards are in constant development to counteract ever-evolving attempts by bad actors seeking to misuse xAI's artificial-

2 Safety (@Safety), X (Jan. 14, 2026, at 5:56 PM), https://perma.cc/C74J-JNNV.

3 *Id.*

intelligence tools, and xAI remains committed to taking "swift and decisive action to remove violating and illegal content, permanently suspend[ing] accounts where appropriate, and collaborat[ing] with local governments and law enforcement as necessary."[4] xAI has instituted civil actions against users who have circumvented Grok's safety controls and generated child sexual abuse material on the platform.[5]

Plaintiffs have now filed sixteen cases across multiple jurisdictions, including the Western District of Arkansas (nine cases), Circuit Court of Benton County, Arkansas (one case), the Northern District of California (five cases), and Superior Court of Los Angeles County, California (one case). While the plaintiffs in the Related Actions are generally pseudonymized, the complaints at issue identify 32 plaintiffs from at least nine states. Half currently reside in Arkansas, or resided in Arkansas at the time of the alleged events, including each of the six plaintiffs identified in one of the putative class actions pending in the Northern District of California. Russell Bloodworth—one of the principal perpetrators named in the complaints—also resides in Arkansas. The remaining identified plaintiffs reside in Pennsylvania, North Carolina, South Carolina, Tennessee, Wyoming, Wisconsin, Ohio, and New Jersey. None of the plaintiffs identified in the pending federal complaints reside in or around California. The only named defendants in these actions are the xAI Defendants, which, depending on the complaint, include Space Exploration Technologies Corp., SpaceXAI Corp. (formerly known as X.AI Corp.), X Corp., and various other affiliated corporate entities.[6] The xAI affiliated entities are Nevada entities with their principal places of business in Texas. *See* Exhibit B.

---

4 *Id.*

5 *See* Compl., *XAI LLC v. Harwood*, No. 7:26-cv-00078 (N.D. Tex. July 14, 2026), ECF No. 1; Compl., *SpaceXAI LLC v. Bloodworth*, No. 7:26-cv-00089 (N.D. Tex. July 30, 2026), ECF No. 1.

6 When this centralization motion was filed, one of the consolidated complaints also named another defendant group consisting of Stability AI U.S. Services Corp. and Stability AI, Inc. *See* First Am. Compl. ¶¶ 23–25, *Doe*

While xAI denies wrongdoing, xAI is aware of extensive plaintiff solicitation efforts by law firms throughout the country.[7] xAI therefore understands that it is likely that additional cases will be filed.

On October 2, 2026, Minor Plaintiff Jane Doe 1—an Arkansas resident who sued xAI in the Western District of Arkansas—filed a motion with this Panel to consolidate and transfer certain related actions before Chief Judge Timothy L. Brooks in the Western District of Arkansas. Three days later, additional Arkansas plaintiffs joined the motion. After that transfer motion was filed, xAI sought stays in the Related Actions pending the Panel's decision on consolidation, but all plaintiffs opposed. In the Western District of Arkansas, on October 22, 2026, the parties filed a joint motion to coordinate the nine federal Arkansas actions and establish a schedule governing the filing of amended complaints, protective orders, an ESI protocol, and motion to dismiss briefing. In the Northern District of California, Judge P. Casey Pitts denied defendants' stay motion on October 15, 2026, and on October 23, 2026, entered the parties' stipulated order consolidating and coordinating the five California actions while the parties await this Panel's ruling. xAI has not yet filed a responsive pleading or Rule 12 motion in any federal case.

---

*1 v. XAI Corp.*, No. 5:26-cv-02246 (N.D. Cal. July 7, 2026), ECF No. 26 [hereinafter *Doe 1 (No. 2246)*]. All parties stipulated to severing the Stability Defendants from Case No. 2246, which the Court ordered on October 23, 2026.

[7] *See, e.g.*, Robert King, *Grok Lawsuit: AI Deepfake & Sexual Exploitation Claims*, King Law (Oct. 8, 2026), https://perma.cc/7LML-DL9Z; *Grok AI Deepfake Lawsuit,* Aylstock, Witkin, Kreis & Overholtz PLC, https://perma.cc/HJ83-PBYN; *xAI Deepfake Lawsuit*, Helping Survivors (Oct. 23, 2026), https://perma.cc/PBR5-55JW.

## ARGUMENT

## I. XAI SUPPORTS CONSOLIDATION IN A SUITABLE FORUM.

xAI agrees that centralization of the Related Actions for pretrial proceedings would "promote the just and efficient conduct" of this litigation for several reasons. 28 U.S.C. § 1407(a); *see In re TikTok, Inc., Minor Priv. Litig.*, 776 F. Supp. 3d 1349, 1350 (J.P.M.L. 2025) (same).

***First***, consolidation would allow a single transferee judge to rule on critical legal issues at the motion to dismiss stage that are common across the Related Actions. *See In re Lead Contaminated Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 777 F. Supp. 2d 1353, 1355 (J.P.M.L. 2011) (centralizing where "defendants claim they will file similar motions to dismiss in most of the related actions"); *In re Protegrity Corp. & Protegrity USA, Inc., Pat. Litig.*, 84 F. Supp. 3d 1380, 1381 (J.P.M.L. 2015) (centralizing to "eliminate the potential for inconsistent rulings on several pending motions to dismiss"). Indeed, a threshold legal question common to these cases is whether xAI can be held liable for its users' unlawful misuse of its neutral AI tools. Each court that presides over one of these cases necessarily must address, among other issues, whether Section 230 of the Communications Decency Act provides immunity to xAI as a provider of an interactive computer service, whether xAI's design and oversight of Grok is a cognizable public nuisance, and whether the alleged creation of inappropriate content at the behest of Grok users constitutes a violation of federal and state statutes that are commonly alleged in most of these actions. These novel legal questions have profound implications for the emerging use of this powerful technology, and the risks from inconsistent rulings would be significant.

***Second***, centralizing the Related Actions will also "eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 699 F. Supp. 3d 1396, 1398 (J.P.M.L. 2023). As in any set of related personal injury actions, plaintiff-specific issues will arise, but centralization will

unquestionably yield significant efficiencies in discovery targeted at xAI. Grok's launch, technical design, and safety precautions will be a significant topic of discovery across the Related Actions, as will xAI's internal policies and practices for investigating, addressing, and resolving misuse of its platform. Given the overlapping allegations about Grok in both the minor and non-consenting adult cases, it is inevitable that the various plaintiffs will pursue documents from similar custodial and non-custodial sources, on similar topics, from a similar period. Equally likely, plaintiffs in the Related Actions will seek to depose a common set of xAI employees who are knowledgeable about Grok's design and safeguards. Centralization will significantly streamline the discovery process, prevent inconsistent discovery rulings, and conserve party resources. *See id.* (centralizing actions that share "complex factual questions arising from allegations that Uber failed to implement appropriate safety precautions to protect passengers" from sexual assault or harassment); *In re Cap. One 360 Sav. Acct. Int. Fee Litig.*, 737 F. Supp. 3d 1359, 1360 (J.P.M.L. 2024) (centralizing actions in which discovery would "overlap extensively").

***Third***, centralization is necessary because efforts to coordinate the Arkansas and California cases with each other informally have been unsuccessful. *See In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, 730 F. Supp. 3d 1352, 1353 (J.P.M.L. 2024) (centralizing where panel was unpersuaded "that informal cooperation among the parties would be feasible"). After plaintiff moved for centralization, xAI asked the Arkansas and California plaintiffs to agree to a temporary pause of the various proceedings in the interest of judicial economy while the Panel considered this motion. Each of the plaintiff groups refused and insisted on moving their respective actions forward without pausing a mere two months for the Panel's decision or coordinating across jurisdictions. Defendants reluctantly filed contested motions for a brief stay of each of the Related Actions to no avail. Judge Pitts denied Defendants' motion on October 15 and proceeded to

consider case-management motions. Defendants then joined the Arkansas plaintiffs in a joint motion to coordinate the Arkansas actions, which asks the Court to deem the Arkansas stay motion moot, and stipulated with the California plaintiffs to consolidate the California actions while the parties await this Panel's ruling. Those district-specific measures leave two parallel tracks on separate schedules, with no mechanism for coordinating between them.

***Fourth,*** formal coordination is needed given that the Related Actions involve ten different plaintiff-counsel groups spanning both federal and state jurisdictions. Coordinating the interests and varying positions across ten different plaintiff-counsel groups renders future informal coordination unlikely, especially considering the unsuccessful attempts by defendants to date. Moreover, because there are both federal and state actions, it is inevitable that coordination across federal and state jurisdictions will be necessary, and an MDL court is uniquely well-positioned to issue a federal-state coordination order to ensure that discovery is conducted in a coordinated and efficient manner that is fair to both sides.

***Fifth***, the fact that the Related Actions involve both individual and putative class actions is not a barrier to centralization. *See, e.g.*, Order Denying Remand at 3, *In re AT&T Inc., Customer Data Sec. Breach Litig.*, MDL No. 3114 (J.P.M.L. Apr. 1, 2025), ECF No. 355 ("Individual actions and putative class actions are routinely centralized in a single MDL where the actions share a common factual core"). Regardless of the procedural vehicle, the threshold 12(b)(6) legal issues as well as the discovery into xAI will be the same. If anything, the fact that both class and individual actions are proceeding in parallel only heightens the need for coordination, because if the cases proceed on their own, they are likely to proceed at significantly different paces, rendering coordination impossible.

For all these reasons, xAI supports centralization in an appropriate forum.

## II. THE WESTERN DISTRICT OF ARKANSAS IS THE MOST APPROPRIATE FORUM FOR AN MDL.

Should the Panel determine that consolidation and transfer of the Related Actions is warranted, the most appropriate transferee forum is the Western District of Arkansas. ***First***, consolidating the Related Actions in the Western District of Arkansas, where the majority of cases are pending, will minimize cost and inconvenience because the vast majority of the identified plaintiffs live in Arkansas or elsewhere in the eastern United States, as well as the fact that Arkansas is centrally located. ***Second***, Chief Judge Brooks has more than a decade of federal judicial experience, and the Western District of Arkansas' caseload is comparatively much lighter than the Northern District of California, where the plaintiffs in the California cases are likely to urge transfer of these cases. ***Third***, all cases remain in preliminary stages, and thus no forum provides a locus of procedurally advanced cases.

### A. Consolidation in the Western District of Arkansas Will Minimize Cost and Inconvenience to the Parties and Witnesses.

As the state that is home to the majority of pending cases and to half of the identified plaintiffs, the Western District of Arkansas is the most convenient and efficient location for resolving this dispute. Currently, nine out of the 14 federal Related Actions are before Chief Judge Brooks. Out of 32 plaintiffs, 16 reside in Arkansas or resided there at the time of the alleged events, including six of the identified plaintiffs in one of the putative class actions pending in the Northern District of California.[8] One of the principal perpetrators named in the complaints, Russell Bloodworth, also resides in Arkansas. Arkansas is an obvious geographic anchor for this litigation.

[8] *See* Compl. ¶¶ 12–17, *Doe 1 v. xAI Corp.*, No. 5:26-cv-08567 (N.D. Cal. Aug. 18, 2026), ECF No. 1.

The Western District of Arkansas is also a convenient, centrally located forum for the non-Arkansas-resident parties. Of the named plaintiffs residing outside of Arkansas, the vast majority live in the eastern United States. Three reside in Tennessee,[9] three reside in Pennsylvania,[10] and two reside in North Carolina.[11] Two other plaintiffs reside in Wyoming and Wisconsin.[12] And one plaintiff does not affirmatively specify a residence, noting only that the plaintiff resides "outside the state of California."[13] Of all the related federal cases, no named plaintiff resides in California. In fact, no named plaintiff in a related federal case even claims to live in the Pacific Time Zone. The concentration of plaintiffs in the eastern United States thus makes the Western District of Arkansas a convenient forum for an MDL.

Additionally, the identified or likely perpetrators are similarly concentrated in the eastern United States, including Arkansas. Russell Bloodworth—one of the most prolific known perpetrators—is an Arkansas resident.[14] The other identified perpetrators are residents of Tennessee, Pennsylvania, Wyoming, and, likely, Wisconsin.[15] With the plaintiffs and perpetrators—along with potential key witnesses and evidence—concentrated in Arkansas and the

---

9 *See* First Am. Compl. ¶¶ 14–16, *Doe 1 (No. 2246)*, ECF No. 26.

10 *See* Compl. ¶¶ 12–14, *Doe 1 v. xAI Corp.*, No. 5:26-cv-09617 (N.D. Cal. Sept. 4, 2026), ECF No. 1.

11 *See* Compl. ¶ 21, *Doe v. xAI Corp.*, No. 5:26-cv-05226 (W.D. Ark. Sept. 3, 2026), ECF No. 2; Compl. ¶ 45, *Doe 6 v. xAI Corp.*, No. 5:26-cv-05242 (W.D. Ark. Sept. 17, 2026), ECF No. 2. Moreover, Fayetteville's airport (XNA) offers nonstop flights to each of these states. *See Nonstop Flights from Northwest Arkansas National Airport*, XNA, https://perma.cc/2GM5-X2MS (showing flights to Nashville, Tennessee; Philadelphia, Pennsylvania; and Charlotte, North Carolina).

12 *See* First Am. Compl. ¶¶ 17–18, *Doe 1 (No. 2246)*, ECF No. 26.

13 Compl. ¶ 16, *Doe 1 v. xAI Corp.*, No. 5:26-cv-09016 (N.D. Cal. Aug. 26, 2026), ECF No. 1.

14 *See* Compl. ¶¶ 106–08, *Doe 1 v. xAI Corp.*, No. 5:26-cv-08567 (N.D. Cal. Aug. 18, 2026), ECF No. 1.

15 *See* First Am. Compl. ¶¶ 140, 175, 182–90, *Doe 1 (No. 2246)*, ECF No. 26; Compl. ¶ 104, *Doe 1 v. xAI Corp.*, No. 5:26-cv-09617, ECF No. 1

eastern United States, the Western District of Arkansas provides a most convenient forum for consolidated litigation. Consolidation and transfer of this litigation to the Northern District of California, on the other hand, would place a disproportionate burden on the parties and witnesses, most of whom live on the opposite side of the country.

Practically speaking, should any case survive dispositive motions and proceed to trial, it is highly likely that the first such trial would proceed in the Western District of Arkansas anyway. Most of the actions pending in the Northern District of California are putative class actions, which inevitably are procedurally slower than individual actions given the need to proceed with Rule 23 motions in the putative class cases prior to summary judgment and trial. If the MDL is located in the Western District of Arkansas, then those first trials would likely be conducted by the MDL judge, who has had the benefit of presiding over prior motions practice and discovery. If the MDL is located elsewhere, however, under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 40 (1998), the individual trials would need to be transferred back to their originating venue for trial: the Western District of Arkansas.

**B. The Western District of Arkansas is Well-resourced to Handle this MDL.**

Consolidating this litigation in the Western District of Arkansas before Chief Judge Brooks will ensure that the MDL is placed in a well-resourced court and before an experienced jurist.

If formed, the Western District of Arkansas has the bandwidth to manage this MDL. Indeed, the Panel previously noted the District's "resources available to manage this litigation," including a lack of pending MDLs on its docket when creating an MDL in the Western District of Arkansas. *In re Pilgrim's Pride Fair Lab. Standards Act Litig.*, 489 F. Supp. 2d 1381, 1381 (J.P.M.L. 2007). The District competently handled that complex MDL, *see, e.g.*, *In re Pilgrim's Pride Fair Lab. Standards Act Litig.*, MDL No. 1:07-CV-1832, 2008 WL 4877239 (W.D. Ark. Mar. 13, 2008), and its docket conditions remain favorable for an MDL today.

In terms of caseload, the Western District of Arkansas currently has around 800 pending civil cases and is not presently burdened by any MDLs, whereas the Northern District of California has around 18,000 pending civil cases and over 20 pending MDLs.[16] That translates to approximately 267 cases per active judge in the Western District of Arkansas compared to approximately 1,304 cases per active judge in the Northern District of California. Thus, the Western District of Arkansas undoubtedly has the time and resources to give this novel and sensitive litigation the appropriate time and attention.

Moreover, Chief Judge Brooks is an experienced and capable jurist, having served as a federal district judge since 2014. Chief Judge Brooks has presided over complex and high-profile litigation and unquestionably has distinguished himself as a jurist capable of handling sensitive and novel issues. *See, e.g.*, *NetChoice v. Griffin*, 831 F. Supp. 3d 816 (W.D. Ark. 2026); *Stinson v. Fayetteville Sch. Dist. No. 1*, 824 F. Supp. 3d 792 (W.D. Ark. 2026). It is expected that the plaintiffs in the California-filed actions will seek centralization of these cases before Judge P. Casey Pitts, who was appointed to federal judicial service three years ago. While there is no question that Judge Pitts is a highly capable judge, Chief Judge Brooks has four times as many years of judicial experience. With Chief Judge Brooks's depth of experience—and a significantly less congested civil and MDL docket—the Western District of Arkansas is a fitting venue for consolidated proceedings.

---

[16] These civil-case figures are based on the most recently published case statistics from the United States District Courts, as of June 2026. *See* U.S. Courts, Table C—U.S. District Courts–Civil Statistical Tables for the Federal Judiciary (June 30, 2026), https://www.uscourts.gov/data-news/data-tables/2026/06/30/statistical-tables-federal-judiciary/c. As of October 1, 2026, the Northern District of California had 19 pending MDLs. *See* U.S. Jud. Panel on Multidistrict Litig., MDL Statistics Report – Distribution of Pending MDL Dockets by District (Oct. 1, 2026), https://perma.cc/NK2S-FS7L. Two other MDLs have been formed in the Northern District of California since then. *See* Transfer Order at 3, *In re Apple AirTag Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 3199 (J.P.M.L. Oct. 2, 2026), ECF No. 78; Transfer Order at 5, *In re Nevro Corp. Spinal Cord Stimulator Prods. Liab. Litig.*, MDL No. 3195 (J.P.M.L. Oct. 2, 2026), ECF No. 44.

### C. All Cases Are in Relatively Early Stages.

Finally, there is no locus of procedurally advanced cases because all cases remain in relatively early stages. The Arkansas cases are sufficiently advanced such that Chief Judge Brooks could promptly begin managing this MDL following centralization. Chief Judge Brooks scheduled a virtual status conference with counsel for all parties for November 6, 2026. And on October 22, 2026, the parties filed a joint motion to coordinate the nine related cases pending in the Western District of Arkansas.

The California-filed actions are not in a meaningfully advanced posture. Judge Pitts has entered the parties' stipulated order consolidating and coordinating the five California actions, but Judge Pitts has not yet set a schedule governing the filing of amended complaints or dispositive motions.

Moreover, the plaintiffs may argue that centralization in California is proper because that is the location of the first-filed case, *see Doe v. X.AI Corp.*, No. 5:26-cv-00772 (N.D. Cal. Jan. 23, 2026), but that matter has progressed no more than any of the other actions. The plaintiffs in that action filed their original complaint in January 2026, and subsequently filed an amended complaint in May.[17] In June, xAI filed motions to stay the action pending criminal proceedings and to transfer the action to the Northern District of Texas.[18] The district court denied those motions in September.[19]

---

17 Compl., *Doe v. X.AI Corp.*, No. 5:26-cv-00772 (N.D. Cal. Jan. 23, 2026), ECF No. 1 [hereinafter *Doe (No. 0772)*]; Am. Compl., *Doe (No. 0772)*, ECF No. 28.

18 Mot. to Stay, *Doe (No. 0772)*, ECF No. 39; Mot. to Transfer, *Doe (No. 0772)*, ECF No. 41.

19 Order Denying Mot. to Stay and Transfer, *Doe (No. 0772)*, ECF No. 80.

## III. THE PANEL SHOULD DECLINE TO INCLUDE *DOE 1 V. X CORP.*, NO. 3:26-CV-10913.

The moving plaintiffs' Schedule of Actions included, by mistake, a four-year-old, procedurally advanced case from the Northern District of California, namely *Doe 1 v. X Corp.*, No. 3:26-cv-10913. *See* Schedule of Actions at 2, ECF No. 3-2. xAI has conferred with moving plaintiffs' counsel, who acknowledged that this case was included in error, and the moving plaintiffs have since filed a Notice of Clarification withdrawing the case from its Schedule of Actions. ECF No. 31.

Consolidation of Case No. 3:26-cv-10913 with the other *Doe* cases is inappropriate under 28 U.S.C. § 1407 for the reasons stated in the moving plaintiffs' Notice of Clarification. The allegations in that case arose years before Grok existed, and even before Twitter merged into X. The specific claims do not involve the generation of images through artificial intelligence. And Case No. 3:26-cv-10913 is procedurally advanced and has gone through multiple rounds of appeals to the Ninth Circuit. For these reasons, the Panel should treat Schedule A as amended and not consolidate and transfer Case No. 3:26-cv-10913.

## CONCLUSION

Consolidation and transfer of the Related Actions to the Western District of Arkansas will promote the just and efficient conduct of this litigation and redound to the convenience of all parties. It will also place this sensitive litigation before an experienced jurist and a well-resourced court unburdened by a heavy caseload. For all these reasons, xAI supports centralization of the Related Actions identified in Exhibit A in the Western District of Arkansas before Chief Judge Brooks.

Dated: October 27, 2026

*/s/ Ragan Naresh*
Ragan Naresh
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, D.C. 20004
ragan.naresh@kirkland.com
Tel: (202) 389-5000
Facsimile: (202) 389-5200

*Attorney for the xAI Defendants*